UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RIGOBERTO RUIZ,

    Plaintiff,

v.

                              Case No. 21CV387

CONAGRA FOODS PACKAGED FOODS, LLC

    Defendant.

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**INTRODUCTION**

Plaintiff filed this negligence action in Wisconsin state court on February 26, 2020. Thereafter, Defendant removed this matter and has now filed its motion to dismiss. In response to that motion to dismiss, Plaintiff has filed his amended complaint which alleges additional facts and specifies particular acts of negligence by the Defendant. These negligent acts include requesting that workers with Covid-19 symptoms continue working in the plant, providing housing to its production workers which did not allow for proper social distancing in their sleeping and living areas, failure to contact trace, failure to enforce the wearing of masks within the plant, failure to train its workers regarding Covid-19 safety, and failure to provide adequate social distance between workers at its plant.

Defendant's brief takes the position that the only act of negligence in this matter is the failure to enforce the masking of its employees within the Darien plant. The Defendant alleges that a mask is a "covered countermeasure" within the Public Readiness and Emergency Preparedness Act (the "PREP ACT"). The Defendant then expands this claim to assert that this entire case is barred by PREP ACT immunity.

In support if its assertion, Defendant cites one case, *Garcia v. Welltower OPCo Group LLC*, No. SACV 2002250JVS, 2021 WL 492581 (C.D. Cal. Feb. 10, 2021). The *Garcia* case involved claims against nursing homes for negligence, The Court in *Garcia* held that the state law negligence claims were both preempted and subject to immunity. This appears to be the only case in the country which made such a ruling and is in conflict with a myriad of cases which have held that complete preemption and immunity do not apply to such state law claims.

> **The Court agrees with the "growing consensus" of district courts holding that state-law claims against nursing homes arising out of COVID-19 injuries are not federal-law claims under the PREP Act.**
> "[T]here is a growing consensus among courts across the country that state-law claims of negligence and wrongful death brought against a nursing home for failure to protect against the spread of COVID-19 ... are not properly characterized as federal-law claims under the PREP Act." *Dupervil v. All. Health Operations, LCC*, No. 20CV4042PKCPK, F.Supp.3d 2021 WL 355137, at *12 (E.D.N.Y. Feb. 2, 2021); *see also Gunter v. CCRC Opco-Freedom Square, LLC*, 8:20-CV-1546-T-36TGW, 2020 WL 8461513, at *1 n.1 (M.D. Fla. Oct. 29, 2020) (remanding to state court and noting that "the applicability of the PREP Act's immunity in the context of a nursing home negligence case has been addressed recently by several other jurisdictions"); *Sherod v. Comprehensive Healthcare Mgmt. Svcs., LLC*, No. 20-cv-1198, 2020 WL 6140474 (W.D. Pa. Oct. 16, 2020) (remanding); *Martin v. Serrano Post Acute LLC*, No. 20-5937DSF, 2020 WL 5422949 (C.D. Cal. Sept. 10, 2020) (remanding); *Lutz v. Big Blue Healthcare, Inc.*, 480 F.Supp.3d 1207 (D. Kan. 2020) (remanding "[b]ecause the PREP Act does not apply, it cannot be used to establish federal question jurisdiction under the doctrine of complete preemption"); *Est. of Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F.Supp.3d 518 (D. N.J. 2020).
>
> Schuster v. Percheron Healthcare, Inc., 2021 WL 1222149, at *2 (N.D.Tex., 2021)

While these cases involved nursing homes, the question decided was whether the Prep Act is a statute that provides complete preemption and immunity from state law claims. These courts all held that it does not.

> The question here is whether the PREP Act has a pre-emptive force "so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar Inc.*, 482 U.S. at 393, 107 S.Ct. 2425. "[T]o determine whether a federal statute completely preempts a state-law claim within its ambit, we must ask whether the federal statute provides 'the exclusive cause of action' for the asserted state-law claim." *Sullivan*, 424 F.3d at 275–76 (quoting *Anderson*, 539 U.S. at 9, 123 S.Ct. 2058). The Court joins the growing consensus and finds that it does not.
>
> Schuster v. Percheron Healthcare, Inc., 2021 WL 1222149, at *3 (N.D.Tex., 2021)

### I. THE PREP ACT DOES NOT APPLY TO THIS CASE

Subsection (a)(1) of the PREP Act does not apply to Plaintiff's claims. The defense applies only where four requirements are met: The plaintiff's claim must be (1) against a "covered person," (2) "for loss," (3) "arising out of, relating, to resulting from the administration to or the use by an individual," (4) of a covered countermeasure subject to a declaration of the HHS Secretary. 42 U.S.C. § 247d-6d(1). The third and fourth elements are not met in this case.

As Conagra points out, Plaintiff's complaint references Conagra's failure to enforce a policy to wear masks within the Darien plant. That allegation does not show that Plaintiffs' claims have a "causal relationship with the *administration to or use by* an individual" of a covered countermeasure. 42 U.S.C. § 247d-6d(a)(2)(B) (emphasis added). To begin with, not all PPE is a "covered countermeasure." Under the statute, only

PPE that both qualifies as a medical device under 21 U.S.C. § 321(h) and is authorized for emergency use by the Food and Drug Administration, or is a respiratory protective device approved by NIOSH, *can* be a covered countermeasure. 42 U.S.C. § 247d-6d(i)(1), (7). Thus, the masks at issue in this case are not covered countermeasures. An emergency use authorization was not issued by the FDA until April 18, 2020, which is the day before the Darien plant was closed. (FDA EAU dated April 24, 2020, amending April 18, 2020 EAU, Exhibit "A") The authorization was issued the last day the Darien plant was open so it would not apply to this claim. Thus, when plaintiff likely contracted the Covid-19 virus, the masks were not covered countermeasures as the FDA had not yet issued its authorization.

Moreover, claims concerning *non*-use of a covered countermeasure are not subject to the subsection (a)(1) defense. Rather, each activity that falls under the statutory immunity is an affirmative act: "the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of [a covered] countermeasure." 42 U.S.C. § 247d-6d(2)(B). The list does not include a failure to act.

The PREP Act's purpose confirms the plain meaning of the text. The Act was intended to encourage the manufacture and distribution of covered countermeasures—not to protect entities that did *not* use them. Supporters explained that the bill was designed to ensure that a pandemic flu "vaccine gets developed and to make sure doctors are willing to give it when the time comes." 151 Cong. Rec. H12244-03 (daily ed. Dec. 18, 2005) (statement of Rep. Nathan Deal); *see also* 151 Cong. Rec. S14242-01

(daily ed. Dec. 21, 2005) (statement of Sen. Hillary Clinton, noting the "provision is being billed as a simple liability protection to help those who would manufacture avian flu vaccine"). Likewise, the addition of NIOSH-approved respiratory protective devices as part of the FFCRA last March was designed to "boost the availability and supply of critically needed respirator [masks]." 166 Cong. Rec. H1675-09 (daily ed. Mar. 13, 2020) (statement of Rep. Greg Walden). *See also* Coronavirus Preparedness and Response: Hearing Before the H. Comm.on Oversight & Reform, Serial No. 116-96 at 43 (2020) (Testimony of Dr. Robert Kadlec, HHS Asst. Secretary for Preparedness and Response, urging addition of respiratory protective devices to PREP Act to extend liability for "manufacturers, distributors, and users" of covered countermeasures to respiratory devices in order to boost supply).

When Congress intends to protect entities from liability for *inaction*, it knows how to do so. For example, in the CARES Act, Congress included liability protection for volunteer healthcare professionals for harm caused by "an act *or omission* of the professional in the provision of health care services during the public health emergency with respect to COVID–19." § 3215(a), 134 Stat. at 374 (emphasis added). And well after the passage of the FFCRA and CARES Act, Congress debated—but ultimately did not enact—adding liability protections for claims like Plaintiffs'. *See*, *e.g.*, 106 Cong. Rec. S2358 (daily ed. May 12, 2020) (Statement of Sen. McConnell, discussing legislation to "raise the liability threshold for COVID-related malpractice lawsuits" and to "create a legal safe harbor" for entities that are "following public health guidelines to the best of their ability"). The subsequent debate over whether to add liability protections for entities sued for failing to take infection control measures

5

suggests that Congress had not already provided for such protection when it added NIOSH-approved respiratory protective devices to the list of covered countermeasures in March 2020.

Conagra relies on HHS's OGC opinion letter, which took the view that subsection (a)(1) applies to claims arising out of non-use of covered countermeasures when the claims relate to "allocation which results in non-use," but not "nonfeasance … that [] results in non-use." Advisory Op. 21-01. Even if correct, that view would not help Conagra here. For this distinction to have any meaning, "cases of general neglect [must] fall outside the protection of the PREP Act. Otherwise, the [Opinion's] limiting language and illustration would be superfluous, if not confounding." *McCalebb*, 2021 WL 911951 at *5. In short, "the gravamen of the Complaint is that Defendant was generally neglectful in operating the Facility." *Id.* Thus, even if the PREP Act applies in *some* cases of non-use, as OGC suggested, it does not here.

## II. THE PREP ACT DOES NOT COMPLETELY PREEMPT PLAINTIFF'S CLAIMS

District courts have nearly unanimously concluded, the PREP Act does not provide for complete preemption of claims based on nursing homes' failures to take adequate safety measures to protect residents from COVID-19. *See McCalebb*, 2021 WL 911951; *Estate of Jones v. St. Jude Operating Co., LLC*, 2021 WL 900672 (D. Or. Feb. 16, 2021); *Robertson v. Big Blue Healthcare, Inc.*, 2021 WL 764566 (D. Kan. Feb. 26, 2021); *Lyons*, 2021 WL 364640; *Dupervil,* 2021 WL 33517; *Goldblatt v. HCP Prairie Vill. KS OPCO LLC*, 2021 WL 308158 (D. Kan. Jan. 29, 2021); *Estate of Smith v. Bristol at Tampa*, 2021 WL 100376 (M.D. Fla. Jan. 12, 2021); *Parker v. St. Jude Operating Co., LLC*, 2020 WL 8362407 (D. Or. Dec. 28, 2020); *Gunter v. CCRC Opco-Freedom*

6

*Square, LLC*, 2020 WL 8461513 (M.D. Fla. Oct. 29, 2020); *Sherod*, 2020 WL 6140474; *Saldana*, 2020 WL 6713995; *Martin*, 2020 WL5422949; *Haro v. Kaiser Found. Hosps.*, 2020 WL 5291014 (C.D. Cal. Sept. 3, 2020); *Eaton v. Big Blue Healthcare, Inc.,* 480 F. Supp. 3d 1184 (D. Kan. 2020).

While there has not yet been a PREP ACT case involving a meat packing plant, the analysis of whether the PREP ACT provides for complete preemption and immunity from state law negligence claims is the same as the above cases which all held that it does not.

By contrast, complete preemption refers to "the specific situation in which a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal." *Schmeling v. NORDAM*, 97 F.3d 1336, 1342 (10th Cir. 1996), *quoted in In re Cmty. Bank of N. Va.*, 418 F.3d 277, 294 (3d Cir. 2005); *see also Rosenberg v. FVI Receivables XVII, LLC*, 835 F.3d 414 n.4 (3d Cir. 2016) (explaining differences between ordinary and complete preemption). "The Supreme Court has recognized the 'complete preemption' doctrine in only three instances:" section 301 of the Labor Management Relations Act, § 502(a) of the Employee Retirement Income Security Act (ERISA), and §§ 85 and 86 of the National Bank Act. *N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

The determination of whether complete preemption exists is not based on "a crude measure of the breadth of the preemption (in the ordinary sense)of a state law by a federal law." *Schmeling*, 97 F.3d at 1342. Rather, two prerequisites for removal of state-law claims on the basis of complete preemption. *See Goepel v. Nat'l Postal Mail*

*Handlers Union, a Div.of LIUNA*, 36 F.3d 306, 311 (3d Cir. 1994) (citing *Railway Labor Execs. Ass'n v.Pittsburgh & Lake Erie R. Co.*, 858 F.2d 936 (3d Cir. 1988)). First, "the statute relied upon by the defendant as preemptive [must] contain[] civil enforcement provisions within the scope of which the plaintiff's state claim falls." *Railway Labor*, 858 F.2d at 942 (citing *Franchise Tax Bd. of State of Cal. v.Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 24, 26 (1983)). Second, there must be "a clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." *Id.* (citing *Met. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987)).

Here, neither requirement is met. First, as explained above, Plaintiff's claims do not relate to the administration or use of a covered countermeasure. Thus, his claims are not within the scope of the PREP Act whatsoever.

Moreover, even if they were, the PREP Act contains a civil enforcement mechanism and demonstrates that Congress intended to permit removal only of a narrow set of state-law claims: those "against a covered person for death or serious physical injury proximately caused by willful misconduct."42 U.S.C. § 247d-6d(d). Such claims, and only such claims, are committed to the exclusive jurisdiction of the United States District Court for the District of Columbia and subject to a specific statutory procedure. *Id.* § 247d-6d(e). This provision demonstrates that Congress knew very well how to provide for an exclusive federal forum when it wanted to—*i.e.,* for actions under subsection (d), which this case is not.

The one district court opinion to conclude otherwise, *Garcia v. Welltower OpCo Grp.*, 2021 WL 492581 (C.D. Cal. Feb. 10, 2021), was based exclusively on deference to OGC Opinion 21-01. But "an agency'sinterpretation of the law which governs [a

federal court's] jurisdiction is not entitled to deference." *Am. Iron & Steel Inst. v. EPA*, 543 F.2d 521, 525–26 (3dCir. 1976); *see also In re Kaiser Aluminum Corp.*, 456 F.3d 328, 344 (3d Cir. 2006);*Texas v. EPA*, 829 F.3d 405, 417 (5th Cir. 2016); *Shweika v. Dep't of Homeland Sec.*, 723 F.3d 710, 718 (6th Cir. 2013)). The question whether complete preemption exists "is not a matter within the particular expertise of" an agency, but rather "a clearly legal issue that courts are better equipped to handle." *Bamidele v. INS*, 99 F.3d 557, 561 (3d Cir. 1996). Further, as several other district courts have noted, the Advisory Opinion relies on "conclusoryassertion[s]," is contrary to precedent, and mistakenly conflates the defenseof section (a)(1) with the exclusive cause of action in section (d). *See McCalebb*,2021 WL 911951, at *4 n.5; *see also Dupervil*, 2021 WL 355137, at *10; *Jones*, 2021 WL 900672, at *6–*7; *Goldblatt*, 2021 WL 308158, at *9. Finally, the *Garcia* court failed to recognize that, even under OGC's view of the PREP Act, for claims alleging non-use resulting from nonfeasance, like those here, as opposed to a "purposeful allocation" of scare resources, there is no preemption. *See McCalebb*, 2021 WL 911951 at *5.

## CONCLUSION

Defendant's Motion to Dismiss should be denied for the above reasons.

Dated this 21st day of April, 2021.

                ARELLANO & PHEBUS, S.C.
                Attorneys for Plaintiff

                *s/ Douglas J. Phebus*
                Attorney Victor M. Arellano
                State Bar No. 1011684
                varellano@aplawoffice.com
                Attorney Douglas J. Phebus
                State Bar No. 1029524
                dphebus@aplawoffice.com
                1468 North High Point Road
                Suite 102
                Middleton, WI 53562
                (608) 827-7680
                (608) 827-7681      (facsimile)