UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RIGOBERTO RUIZ,

           Plaintiff,

v.

CONAGRA FOODS PACKAGED FOODS, LLC

           Defendant.

Case No. 2:21-cv-00387

**CONAGRA FOODS PACKAGED FOODS, LLC'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

Plaintiff's Amended Complaint should be dismissed because, although it purports to raise two Wisconsin state law causes of action against Defendant, ConAgra Foods Packaged Foods, LLC ("ConAgra"), those two causes of action both stem from Plaintiff's claim that ConAgra failed to follow adequate COVID-19 protection processes (contact tracing, training of COVID-19 safety protocols, social distancing, and mask procedures), and as such, they are completely preempted by the Public Readiness and Emergency Preparedness Act (the "PREP Act").

Specifically, Plaintiff's Amended Complaint alleges that, under Wisconsin law, Plaintiff is entitled to wrongful death and survival damages from ConAgra, because Plaintiff claims that he contracted COVID-19 while working at ConAgra's food plant, and that he then infected his wife, who tragically passed away from the disease on May 5, 2020. (Amended Complaint ¶¶ 7-14, ECF No. 8.)[1] According to Plaintiff, even though ConAgra temporarily closed the plant, ConAgra

---

[1] In response to ConAgra's Motion to Dismiss Plaintiff's original Complaint (ECF No. 5), Plaintiff filed an Amended Complaint, which rendered moot ConAgra's initial Motion to Dismiss. *See Coalition to Save the Menominee River, Inc. v. U.S. E.P.A.*, No. 18-CV-1798, 2019 WL 1746336, *1 (E.D. Wis. Apr. 18, 2019) ("[g]enerally, the filing of an amended complaint renders moot any pending motion to dismiss."). ConAgra files the instant Motion to Dismiss to address Plaintiff's Amended Complaint.

1

HB: 4846-6159-5880.1
Case 2:21-cv-00387-SCD    Filed 05/04/21    Page 1 of 13    Document 11

failed to create a safe workplace, because ConAgra "requested that employees . . . continue to work," but did not appropriately distance workers in that space, and because ConAgra "failed to establish a contact tracing system, train its workers regarding COVID-19 safety, properly distance its employees within the plant to minimize risk, and require and enforce proper wearing of masks within the plant." (*Id.* ¶¶ 7, 9-11 (cleaned up).)

However, ConAgra – which remained open, following a brief temporary closure, because it was deemed essential and critical infrastructure – undertook efforts to prevent the spread of COVID-19 within the facility at which Plaintiff worked, including having its employees use personal protective equipment ("PPE"), such as masks. And although Plaintiff's wife's death is certainly tragic, the PREP Act nevertheless bars Plaintiff's claims, because ConAgra is a "covered" entity that engaged in "recommended activities" related to the administration and use of a "covered countermeasure" during the COVID-19 pandemic. *See* 42 U.S.C. §§ 247d-6d, 247d-6e. As such, Plaintiff's Amended Complaint should be dismissed.

## BACKGROUND AND PLAINTIFF'S ALLEGATIONS

At all relevant times, Plaintiff worked for ConAgra at ConAgra's frozen food plant in Darien, Wisconsin, where ConAgra produces Birds Eye Frozen Vegetable products. (Compl. ¶ 5, ECF No. 8.)

Plaintiff's allegations all relate to the very early phases of the COVID-19 pandemic. COVID-19 overtook the United States, and Wisconsin, quickly. In January 2020, the Secretary of the Department of Health and Human Services ("HHS") declared that COVID-19 created a public health emergency.[2] On March 11, 2020, the World Health Organization (the "WHO") declared a

---

[2] Determination that a Public Health Emergency Exists, https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx (last visited Mar. 29, 2021). In addition to the allegations set forth in Plaintiff's Amended Complaint, the Court "may consider . . . information that is properly subject to judicial notice." *O'Brien v. Village of Lincolnshire*, 955 F.3d

2

HB: 4846-6159-5880.1
Case 2:21-cv-00387-SCD   Filed 05/04/21   Page 2 of 13   Document 11

global pandemic.[3] On March 12, 2020, Wisconsin's Governor issued Executive Order 72, which declared a public health emergency in Wisconsin, and ordered the Wisconsin Department of Health Services to take steps to protect Wisconsin against COVID-19.[4] On March 13, 2020, Wisconsin's Governor ordered all schools to close.[5] The same day, the President of the United States invoked the Stafford Act to declare a nationwide emergency.[6] On March 19, 2020, the federal government designated various sectors of the United States economy "critical infrastructure."[7] The government set forth sixteen "sectors" of critical infrastructure.[8] On March 24, 2021, Wisconsin's Governor issued Emergency Order 12 – the "Safer at Home Order" – which required non-essential Wisconsin businesses to close.[9]

ConAgra, a food manufacturer and packager, was critical infrastructure in the food and agriculture sector. The Centers for Disease Control and Prevention (the "CDC") issued recommendations, guidance, and advice for each sector of critical infrastructure.[10] Those recommendations, guidance, and advice evolved as the government's, and the country's, understanding of COVID-19 evolved.

---

616, 621 (7th Cir. 2020). The Court may also "take judicial notice of matters of public record . . . ." *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019).
[3] WHO Director-General's Opening Remarks at the Media Briefing on COVID-19 (Mar. 11, 2020), https://www.who.int/director-general/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020 (last visited Mar. 29, 2021).
[4] https://evers.wi.gov/Pages/Newsroom/Executive-Orders.aspx (last visited March 31, 2021).
[5] *Id.*
[6] COVID-19 Emergency Declaration, https://www.fema.gov/press-release/20210318/covid-19-emergency-declaration (last visited Mar. 29, 2021).
[7] *See* Guidance on the Essential Critical Infrastructure Workforce, https://www.cisa.gov/publication/guidance-essential-critical-infrastructure-workforce (last visited Mar. 29, 2021).
[8] Identifying Critical Infrastructure During COVID-19, https://www.cisa.gov/identifying-critical-infrastructure-during-covid-19 (last visited Mar. 29, 2021).
[9] https://evers.wi.gov/Pages/Newsroom/Executive-Orders.aspx (last visited March 31, 2021).
[10] COVID-19 Critical Infrastructure Sector Response Planning, https://www.cdc.gov/coronavirus/2019-ncov/community/critical-infrastructure-sectors.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fcommunity%2Fcritical-workers%2Fimplementing-safety-practices.html (last visited Mar. 29, 2021).

To support the United States economy and to maintain the country's critical food supply and food and agriculture sector, ConAgra kept its plant open, following a brief temporary closure. (Compl. ¶¶ 7, 9, ECF No. 8.) Plaintiff alleges that, despite ConAgra's risk mitigation efforts and policies, he contracted COVID-19 at ConAgra's plant.[11] (*Id.* ¶¶ 7, 11-12.) Plaintiff alleges that he "brought the Covid-19 virus home from the [ConAgra] plant and infected his wife," who died of the illness on May 5, 2020. (*Id.* ¶¶ 13-14.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's claims must be dismissed if the allegations do not set forth enough facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A party's claims can only survive if the allegations permit the court to draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," cannot sustain a claim, *id.*, and the claim must be dismissed if the allegations do not "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.

In making that determination, courts consider the allegations in the Plaintiff's Amended Complaint, but they may also "consider documents that are attached to the complaint, documents that are central to the complaint and referred to in it, and information that is properly subject to judicial notice." *O'Brien*, 955 F.3d at 621. Courts may also "take judicial notice of matters of public record and consider documents incorporated by reference in the pleadings." *Orgone*, 912 F.3d at 1044.

---

[11] Because ConAgra's Motion is a 12(b)(6) Motion, ConAgra is, of course, accepting Plaintiff's allegations as true. However, ConAgra is also reserving its right to contest Plaintiff's factual allegations at a later date. ConAgra notes, for example, that there were numerous community outbreaks in the area at that time.

# ARGUMENT

Although Plaintiff's wife's death was a tragedy, as are all COVID-19 deaths, Plaintiff's Amended Complaint also highlights the COVID-19 challenges that critical infrastructure businesses faced, particularly in the early days of the pandemic, when Plaintiff alleges he contracted the disease. Plaintiff's Amended Complaint also calls to mind the evolving standards of care that critical infrastructure businesses faced in the spring of 2020, when, had food companies like ConAgra closed, food shortages would have been much more severe than the empty grocery store shelves that were regularly reported in the news at that time.

For these and other related reasons, the federal government determined that critical infrastructure companies such as ConAgra must be immune from lawsuits like Plaintiff's. Simply put, in a global pandemic, companies that produce food, like ConAgra, are vital to the country's population, and they needed to remain open. In order to do that, they needed to be free from liability for taking the types of calculated risks that the government asked them to take for the sake of the rest of the country.[12]

The Court should defer to the government's policy judgment in this area, and find that Plaintiff's claims against ConAgra are completely preempted by the PREP Act, meaning ConAgra has immunity from Plaintiff's claims.

1. **The PREP Act.**

The HHS Secretary has authority to issue a declaration invoking the PREP Act. 42 U.S.C. § 247d-6d(b)(1). The HHS Secretary has the authority to do so when the HHS Secretary determines that a condition, such as COVID-19, "constitutes a public health emergency." *Id.*

---

[12] It is also worth noting that the federal government was not alone in making this type of policy determination. In February 2021, Wisconsin enacted its own immunity statute related to COVID-19. *See* Wis. Stat. § 895.476. For lawsuits filed after a certain date, the Wisconsin law provides immunity from civil liability for death, injury, or damages caused by acts or omissions related to exposure to COVID-19. *Id.* Covered entities include employers, and their agents, with respect to workplace exposure. *Id.*

Through the declaration, the HHS Secretary can "recommend[] . . . the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures." *Id.* On March 17, 2020, the HHS Secretary issued a declaration to address the COVID-19 global pandemic (the "<u>Declaration</u>"). *See* 85 Fed. Reg. 15198-01 (Mar. 10, 2020).

The Declaration creates broad immunity for claims against "covered" entities. 42 U.S.C. § 247d-6d(a)(1). A "covered person" includes "a person or entity that is a qualified person who prescribed, administered, or dispensed such countermeasure." 42 U.S.C. § 247d-6d(i)(2)(B)(iv). A "covered countermeasure" is "a qualified pandemic . . . product," "security countermeasure," "device . . . authorized for emergency use, or a respiratory protective device . . . that the Secretary determines to be a priority for use during a public health emergency." 42 U.S.C. § 247d-6d(i)(1). The Declaration further defines "covered countermeasures" as "any other device . . . used to . . . prevent or mitigate COVID-19." 85 Fed. Reg. at 15202.

PREP Act immunity "applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(2)(B). This includes "a causal relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, licensing, or use of such countermeasure." *Id.*

There are only two immunity exceptions. First, the PREP Act creates "an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct." 42 U.S.C. § 247d-6d(d)(1). However, claims of that nature can only be brought in the United States District Court for the District of Columbia. 42 U.S.C. § 247d-6d(e)(1). Second, the PREP Act creates a "Covered Countermeasure Process Fund," which provides "compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure pursuant to such declaration." 42 U.S.C. § 247d-6e(a).

6
HB: 4846-6159-5880.1
Case 2:21-cv-00387-SCD   Filed 05/04/21   Page 6 of 13   Document 11

Finally, the PREP Act completely preempts state law claims. *See Garcia v. Welltower OpCo Group LLC*, Case No. SACV 20-02250JVS, 2021 WL 492581 (C.D. Cal. Feb. 10, 2021) (finding "that the PREP Act provides for complete preemption."); *see also* HHS OGC Advisory Opinion 21-02 (Jan. 8, 2021) ("The *sine qua non* of a statute that completely preempts is that it establishes either a federal cause of action, administrative or judicial, as the only viable claim or vests exclusive jurisdiction in a federal court. The PREP Act does both.").[13]

**2.     The PREP Act completely preempts Plaintiff's claims against ConAgra.**

ConAgra is immune under the PREP Act and the implementing Declaration (and its various amendments). The PREP Act immunizes from lawsuits covered persons and attempted countermeasures so that certain resources and infrastructure remain available during an emergency. The PREP Act creates immunity for situations like those so that, among other things, United States citizens have food available even during a pandemic. Without immunity, and faced with the prospect of lawsuits stemming from a COVID-19 spread that even some of the strictest lockdown measures have not been able to contain, critical businesses would simply stop operating.

In this case, because Plaintiff's claims relate to ConAgra's administration of efforts intended to prevent or mitigate the spread of COVID-19, the PREP Act bars Plaintiff's claims. The PREP Act empowers the HHS Secretary to issue a declaration that identifies the "covered persons" who/which are immune from liability regarding all claims for loss caused by, arising out of, relating to, or resulting from the use or administration of a "covered countermeasure" during a health emergency. 42 U.S.C. § 247d-6d(a)(1), (b).

Moreover, the Declaration also provides immunity for "recommended activities," which includes the administration, distribution, and use of covered countermeasures intended to mitigate

---

[13] *Available at* https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/2101081078-jo-advisory-opinion-prep-act-complete-preemption-01-08-2021-final-hhs-web.pdf (last visited Mar. 29, 2021).

or prevent the spread of COVID-19. 85 Fed. Reg. 15198-15201. To that end, on April 10, 2020, the HHS Secretary amended the Declaration to add "respiratory protective device[s] approved by NIOSH" as "covered countermeasures." 85 Fed. Reg. 21012-02. Then, on June 8, 2020, the HHS Secretary further amended the Declaration. The June 8, 2020, Amendment retroactively included products that "limit the harm [that] a pandemic or epidemic might otherwise cause" as "covered countermeasures." 85 Fed. Reg. 35100, at 35101.

Under those authorities, a person or entity is entitled to PREP Act immunity if:

(1) The person/entity is a "covered person";

(2) The person/entity is administering or using a "covered countermeasure";

(3) the claim against which the person/entity asserts immunity "arises out of, relates to, or results from" the administration or use of the countermeasure in question;

(4) the administration or use occurs during the "effective period"; and

(5) the "covered countermeasure" was obtained through a specified "means of distribution."

42 U.S.C. §§ 247d-6d, 247d-6e; *see also* 85 Fed. Reg. 15198.

ConAgra is immune from Plaintiff's claims because Plaintiff's allegations confirm that ConAgra's COVID-19 policies and activities meet the required elements.

### A. ConAgra is a "covered person" and Plaintiff's allegations arise out of or relate to the administration or use of a countermeasure.

ConAgra is a "program planner." Under the PREP Act, a "program planner" is a person or entity who/that:

> supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice

8

or assistance or provides a facility to administer or use a covered countermeasure in accordance with a declaration.

42 U.S.C. § 247d-6d(i)(6). The HHS Secretary further clarified that a "private sector employer . . . can be a program planner when it carries out the described activities." 85 Fed. Reg. at 15202.

In the face of the COVID-19 global pandemic, ConAgra implemented an infection control program that included, among other things, a temporary closure of the facility and the use of PPE, such as masks. (*See* Compl. ¶¶ 7 and 11.D, ECF No. 8.) At the same time, due to its status as essential infrastructure, ConAgra requested that able employees continue working. (*Id.*, ¶ 9.) Plaintiff alleges that, but for ConAgra's decisions regarding the temporary closure and request that employees continue working, he would not have contracted COVID-19.[14] (*Id.* ¶¶ 7-11.) Therefore, Plaintiff's allegations demonstrate that his claimed injuries "arise out of and relate to" ConAgra's administration of a covered countermeasure, and they therefore trigger PREP Act immunity.

### B. ConAgra's mask policy and implementation is a "covered countermeasure."

Plaintiff alleges that ConAgra failed to "establish a contact tracing system, train its workers regarding COVID19 safety, properly distance its employees within the plant to minimize risk, and require and enforce the proper wearing of masks within the plant." (*Id.* ¶ 11 (cleaned up).) Plaintiff also alleges that ConAgra's temporary plant closure and request that able employees continue working failed to protect him against COVID-19. (*Id.*) "Covered countermeasures" include,

---

[14] Although Plaintiff is critical of ConAgra's administration of its mask policy, it is worth recalling that, in early Spring 2020, there was not only a shortage of masks available – with some calling for available masks to be reserved for hospital staffs and the like – but there was also evolving advice from the CDC about whether uninfected individuals needed to or should be wearing masks. *See, e.g.*, https://www.npr.org/sections/health-shots/2020/03/31/824560471/should-we-all-be-wearing-masks-in-public-health-experts-revisit-the-question (noting that, as of March 31, 2020, "the CDC website [said] the only people who need to wear a face mask are those who are sick or are caring for someone who is sick and unable to wear a mask.") (last visited March 31, 2021); https://www.cdc.gov/media/releases/2020/p0714-americans-to-wear-masks.html (July 14, 2020 CDC press release: "CDC calls on Americans to wear masks to prevent COVID-19 spread.") (last visited March 31, 2021).

among other things, "qualified pandemic or epidemic products," a "device authorized for emergency use," or "a respiratory protective device." 42 U.S.C. § 247d-6d(i)(1), (8). ConAgra's COVID-19 protocol included covered countermeasures, such as the use and implementation of PPE, like masks, as well as attempted distancing of employees.

Not only is the use of PPE a covered countermeasure under the PREP Act, but federal legislation also identifies masks as a covered countermeasure. *See* Pub. Law. No. 115-127, § 6005. The FDA has further included masks as one of many categories of PPE in the FDA's COVID-related Emergency Use Authorizations.[15] Therefore, ConAgra is a covered person that administered and used a covered countermeasure.

### C. ConAgra engaged in recommended activities during the "effective period."

ConAgra, a food manufacturer and packager, was and is involved in PREP Act "recommended activities," such as the "distribution, administration and use of one or more covered countermeasures," including any activity that is part of an authorized emergency response, at any level of government. *See* 85 Fed. Reg. at 15201. These activities can be authorized through guidance, requests for assistance, agreements, or other arrangements, and they are covered under the PREP Act regardless of whether a state or local authority has declared a state of emergency.

In this case, ConAgra was deemed critical infrastructure, and as such, as Plaintiff's allegations concede, ConAgra remained open and continued to operate after most other businesses were shut down. As part of an authorized emergency response (directed by various government agencies), ConAgra implemented CDC guidelines and procedures, including a mask policy, while ConAgra's plant remained open even though other businesses were ordered by the government to close.

---

[15] *See* Personal Protective Equipment EUAs, https://www.fda.gov/medical-devices/coronavirus-disease-2019-covid-19-emergency-use-authorizations-medical-devices/personal-protective-equipment-euas (last visited Mar. 29, 2021).

10
HB: 4846-6159-5880.1
Case 2:21-cv-00387-SCD   Filed 05/04/21   Page 10 of 13   Document 11

ConAgra implemented these covered countermeasures within the "effective period" and for the purpose of mitigating the disease identified in the Declaration. *See* 42 U.S.C. § 2473-d(3)(A), (B). The Declaration expressly defines "administration of a covered countermeasure" to include providing "countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution, and dispensing of the countermeasures to recipients," as well as "management and operation of countermeasure programs." 85 Fed. Reg. at 15200. Plaintiff's allegations stem from ConAgra's management of a mask policy, a covered countermeasure, and recommended activity.

**3.     Plaintiff otherwise fails to state a claim.**

Beyond the PREP Act's complete preemption, Plaintiff also nebulously attempts to state a common law negligence claim and a claim for violation of Wis. Stat. § 101.11. However, both of those attempts fail. First, although Wis. Stat. § 101.11 imposes some obligations on employers, *Mair v. Trollhaugen Ski Resort*, 2006 WI 61, ¶ 19, 291 Wis. 2d 132, 715 N.W.2d 598 (citation omitted), to the extent Plaintiff attempts to "bring[] this case under [the] Wisconsin Safe Place Act claims," his efforts fail, because "[t]he safe place statute does not create a distinct cause of action." *Id.* ¶ 20 (citation omitted).

Second, to state a claim for common law negligence, Plaintiff "must prove four elements: "(1) a duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damages as a result of the injury." *Martindale v. Ripp*, 2001 WI 113, ¶ 33, 246 Wis. 2d 67, 629 N.W.2d 698 (internal quotation marks and citation omitted). Plaintiff must allege these elements with more than conclusory statements, which he fails to do. Beyond alleging that ConAgra owed a duty of care to him, Plaintiff makes no allegation that what ConAgra did, or did not do, during the early stages of the COVID-19 global pandemic was unreasonable under the circumstances, or that ConAgra's actions caused

foreseeable harm.  *See Hoida, Inc. v. M & I Midstate Bank*, 2006 WI 69, ¶¶ 27-33, 291 Wis. 2d 283, 717 N.W.2d 17.  In fact, the very nature of a pandemic – particularly in the early phases – makes both the duty owed and the potential harm unforeseeable.  Although Plaintiff attempts to tie the required duty to Wis. Stat. § 101.11, no court has yet expanded that safe place statute to cover COVID-19 protocols.  As a result, coupled with the Wisconsin legislature's subsequent enactment of Wis. Stat. § 895.476 (*see also supra* n.12), this Court should not wade into the "uncertainty" of "whether Wisconsin courts would permit recovery" based on allegedly negligent COVID-19 protocols.  *See Hopkins v. ROS Stores, Inc.*, 750 F. Supp. 379, 382 (W.D. Wis. 1990) (declining to expand the Wisconsin safe place statute when no Wisconsin courts nor the Wisconsin legislature had provided "authoritative signal[s]" on the issue.").

## CONCLUSION

"[T]he PREP Act exists, in part, to remove legal uncertainty and risk."  (OGC Advisory Opinion 20-04 at 1.)  As confirmed by Plaintiff's own allegations, the PREP Act immunizes ConAgra against Plaintiff's causes of action, which all stem from Plaintiff's underlying allegation that ConAgra did not effectively administer its mask policy.  Accordingly, the Court should dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).

Dated this 4th day of May, 2021.

*s/ Patrick M. Harvey*
Patrick M. Harvey
State Bar No. 1059695
Emily L. Stedman
State Bar No. 1095313
Attorneys for Defendant, ConAgra Foods
Packaged Foods, LLC
HUSCH BLACKWELL LLP
511 North Broadway, Suite 1100
Milwaukee, Wisconsin 53202
Telephone: 414.273.2100
Fax: 414.223.5000
Email: patrick.harvey@huschblackwell.com
emily.stedman@huschblackwell.com