UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**RIGOBERTO RUIZ,**

    **Plaintiff,**

    **v.**                                                                                  Case No. 21-CV-387-SCD

**CONAGRA FOODS PACKAGED FOODS, LLC,**

    **Defendant.**

---

### DECISION AND ORDER DENYING DEFENDANT'S
### MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

---

On February 26, 2021, Rigoberto Ruiz filed a complaint in Walworth County Circuit Court against his former employer, ConAgra Foods Packaged Foods, LLC, alleging state-law claims of wrongful death and survival. *See* ECF No. 1-2. ConAgra removed the action to federal court on March 26, 2021, ECF No. 1, and the parties consented to magistrate-judge jurisdiction, see ECF Nos. 4, 9. After ConAgra filed a motion to dismiss the complaint, ECF No. 5, Ruiz responded by filing an amended complaint, ECF No. 8. The amended complaint alleges that Ruiz contracted COVID-19 while working at ConAgra under unsafe conditions and that Ruiz transmitted the virus to his wife, who succumbed to the disease. ConAgra has filed a motion to dismiss the amended complaint, arguing that the Public Readiness and Emergency Preparedness Act (PREP Act), see 42 U.S.C. § 247d-6d, immunizes ConAgra from Ruiz's claims. ECF No. 10. For the reasons given below, the motion will be denied.[1]

---

[1] ConAgra's motion to dismiss the original complaint, ECF No. 5, is denied as moot. *See Coal. to Save the Menominee River, Inc. v. U.S. EPA*, No. 18-C-1798, 2019 WL 1746336, at *1 (E.D. Wis. Apr. 18, 2019) (noting that the filing of an amended complaint generally renders moot a motion to dismiss the original complaint).

## BACKGROUND

The following allegations are taken from Ruiz's amended complaint. *See* ECF No. 8. ConAgra operates a meat-packing plant in Darien, Wisconsin, where Ruiz was employed from 1995 until he tested positive for COVID-19 on April 22, 2020. *Id.* ¶ 5. Ruiz alleges that he contracted COVID-19 because of ConAgra's inadequate safety measures and, in some cases, the failure to institute any measures at all. As a result, Ruiz alleges that over 100 of ConAgra's employees tested positive for COVID-19 in April 2020, an outbreak that prompted ConAgra to temporarily close its plant on April 22, 2020. *See* ECF No. 8 ¶¶ 5-9.

Ruiz alleges that, prior to its temporary closure, ConAgra was aware of at least one of its employees testing positive for COVID-19; it further knew that many of its employees exhibited symptoms caused by COVID-19. Despite this knowledge, ConAgra failed to institute adequate safety measures. In fact, Ruiz alleges that ConAgra requested that its employees who were exhibiting COVID-19 symptoms continue working. As for workers housed in the company dorm, Ruiz alleges that ConAgra failed to properly space out its workers' sleeping arrangements. Moreover, the amended complaint alleges that ConAgra failed to institute a track-and-trace system or train its workers properly to mitigate COVID-19 risks. The company also allegedly failed to properly distance its workers or enforce a mask policy. Ruiz alleges that many of these failures were in violation of Governor Evers' emergency orders. Ruiz alleges that he contracted the virus as a result of ConAgra's inadequate safety measures and then unwittingly exposed his wife, who later died from the disease. *See* ECF No. 8 ¶¶ 9-12. Accordingly, Ruiz now brings both a wrongful death and a survival action against his former employer, ConAgra.

## MOTION TO DISMISS

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the plaintiff's pleaded allegations. To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 129 (2009)). Indeed, "the plausibility requirement demands . . . that a plaintiff provide sufficient detail 'to present a story that holds together.'" *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)).

Nonetheless, a court may "reject sheer speculation, bald assertions, and unsupported conclusory statements." *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (citations omitted). Likewise, a pleading is insufficient where it merely offers "labels and conclusions or a formulaic recitation of the elements of a cause of action, . . . [or] tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)) (internal quotation marks omitted).

## DISCUSSION

### I. PREP Act Immunity

ConAgra first argues that the PREP Act immunizes it from the claims alleged in the amended complaint. In 2005, Congress enacted the PREP Act in response to the SARS epidemic of 2003. The purpose of the Act's immunity provision is to insulate covered individuals and entities from liability for their administration or use of countermeasures, such

3

as vaccines or N95 surgical masks, that are designed to combat the pandemic. "[T]he Act precludes . . . liability claims alleging negligence by a manufacturer in creating a vaccine, or negligence by a health care provider in prescribing the wrong dose, absent willful misconduct." *Estate of Maglioli v. Andover Subacute Rehab. Ctr. I,* 478 F. Supp. 3d 518, 531 (D.N.J. 2020).[2] The Act's immunity provision states:

> a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration [by the Secretary of a public health emergency] has been issued with respect to such countermeasure.

42 U.S.C. §§ 247d-6d(a)(1), 247d-6d(b)22. To trigger the immunity provision, there must be "a causal relationship with the administration to or use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(2)(B).

"Covered countermeasures" are determined by the Secretary of the Department of Health and Human Services (the Secretary). In March 2020, the Secretary declared a "public health emergency" under the PREP Act and recommended certain covered countermeasures to combat COVID-19. *See* Declaration, 85 Fed. Reg. 15,198. Originally, the "covered countermeasures" were limited to "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19 . . ." *Id.* at 15,202. This definition "has been amended and expanded" several times. *Bolton v. Gallatin Ctr. for Rehab. & Healing, LLC*, No. 3:20-cv-00683, 2021 WL 1561306, at *3 (M.D. Tenn. Apr. 21, 2021). By December 2020, the Secretary had declared that covered countermeasures included products manufactured, used, or designed to prevent COVID-19,

---

[2] The link quoted in that opinion is no longer accessible. The same information, however, can be found in the Federal Register. *See* Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasure Against COVID-19, 85 Fed. Reg. 15,198, 15,200 (Mar. 17, 2020).

which could include facemasks. *See* Fourth Amendment to the Secretary's Declaration, 85 Fed. Reg. 79,190, 79,196 (Dec. 9, 2020).

To prevail on its immunity argument, ConAgra must establish both that it is a covered person and that it implemented covered countermeasures. And, although the parties gloss over the point, any immunity would apply only to injury "caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." § 247d-6d(a)(1). Here, most of Ruiz's claims have nothing to do with covered countermeasures; instead, Ruiz asserts much more general claims about unsafe working conditions—requiring employees to work while sick, inadequate spacing, and the like. Accordingly, even if I agreed with Conagra that the PREP Act applies, most of the amended complaint's allegations would remain untouched by the Act's immunity provision. *See Maglioli,* 478 F. Supp. 3d at 533 (on appeal) ("[M]any of the measures with which Defendants allegedly failed to comply were acts such as 'social distancing, quarantining, lockdowns, and others.' . . . These are not covered 'countermeasures' under the PREP Act at all.").

### A. Covered Person

Immunity is conferred upon only a "covered person." The statute defines a covered person, when used with respect to the administration or use of a covered countermeasure, as "a person or entity that is . . . (i) a manufacturer of such countermeasure; (ii) a distributor of such countermeasure; (iii) a program planner of such countermeasure; (iv) a qualified person who prescribed, administered, or dispensed such countermeasure," or (v) an agent or employee of one of the above. 42 U.S.C. § 247d-6d(i)(2)(B). ConAgra maintains that it is a program planner, which the statute defines as:

> a State or local government . . . or *other person who supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of . . . a qualified pandemic or epidemic product*, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with a declaration under subsection (b).

42 U.S.C.A. § 247d-6d(i)(6) (italics added).

ConAgra argues that because it took certain safety precautions, including distributing facemasks to its employees, it "administered a program with respect to the . . . dispensing, distribution, provision, or use of . . . a qualified pandemic or epidemic product." ConAgra, a food company, does not naturally fit within the PREP Act's purpose, which is to shield the medical community from liability. *See, e.g., Maglioli,* 478 F. Supp. 3d at 529 ("[The PREP Act's] evident purpose is to embolden caregivers, permitting them to administer certain encouraged forms of care . . . with the assurance that they will not face liability for having done so.") Nonetheless, in an advisory opinion issued in October 2020, the Secretary's Office of General Counsel noted that "any individual or organization can potentially be a program planner and receive PREP Act coverage." U.S. Dep't of Health & Human Servs., Office of Gen. Counsel, Advisory Opinion 20-04 on the Public Readiness and Emergency Preparedness Act and the Secretary's Declaration Under the Act, at 3 (Oct. 23, 2020). The opinion stated that even a grocery store that implements a mask policy may be entitled to PREP Act immunity. *Id.* at 6.

Here, because the Act's language is quite broad, it is conceivable that, in issuing masks and other personal protective equipment to its employees, ConAgra "administered a

program" with respect to dispensing qualified pandemic products. Accordingly, I will assume for purposes of ConAgra's motion that the company could qualify as a program planner.[3]

B. Causal Link between Covered Countermeasure and Loss

As noted above, the PREP Act provides immunity for "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." § 247d-6d(a)(1). Thus, for the PREP Act to apply, there must be a causal link between the program planner's use of covered countermeasures and the injury the plaintiff sustained. *See Brown v. Big Blue Healthcare*, 480 F. Supp. 3d 1196, 1206 (D. Kan. 2020) ("The PREP Act still requires a causal connection between the injury and the use or administration of covered countermeasures"). In arguing that PREP Act immunity applies to Ruiz's claims, ConAgra contends that, "because Plaintiff's claims relate to ConAgra's administration of efforts intended to prevent or mitigate the spread of COVID-19, the PREP Act bars Plaintiff's claim." ECF No. 11 at 7.

The injury here "relates to" the administration of covered countermeasures only in the negative sense, however. That is, the amended complaint alleges that the injury resulted from Conagra's lax safety measures, including *not* requiring employees to wear masks. Although the Act's "relating to" language is arguably quite broad, courts have not stretched it so far as to immunize a defendant for *not* providing or requiring covered countermeasures. *See Eaton v. Big Blue Healthcare*, 480 F. Supp. 3d 1184, 1195 (D. Kan. 2020) ("There is simply no room to read [the PREP Act] as equally applicable to the non-administration or non-use of covered

---

[3] Notably, other courts have raised questions about the persuasiveness of the Secretary's declarations and the Office of General Counsel's advisory opinions. *See, e.g.*, *Bolton*, 2021 WL 1561306, at *8 (concluding that a different PREP Act advisory opinion "lacks the power to persuade") (citation and internal quotation marks omitted); *Khalek v. S. Denver Rehab., LLC*, No. 1:20-CV-02240-RBJ, 2021 WL 2433963, at *5 (D. Colo. June 11, 2021) (same); *Smith v. Colonial Care Ctr., Inc.*, No. 2:21-CV-00494-RGK-PD, 2021 WL 1087284, at *6 (C.D. Cal. Mar. 19, 2021) (same).

7

countermeasures."). As another court aptly put it, the PREP Act was "designed to protect those who employ countermeasures, not those who decline to employ them." *Maglioli*, 478 F. Supp. 3d at 531; *see also Sherod v. Comprehensive Healthcare Mgmt. Servs., LLC*, No. 20CV1198, 2020 WL 6140474, at *7 (W.D. Pa. Oct. 16, 2020) ("The PREP Act creates immunity for all claims of loss causally connected to the *use* of covered countermeasures.") (emphasis added). Indeed, "other district courts have consistently found that failures to take countermeasures . . . fall outside the ambit of the PREP Act." *Khalek*, 2021 WL 2433963, at *6 (compiling cases). Here, because the amended complaint alleges that Ruiz contracted COVID-19 because of ConAgra's failure to implement adequate countermeasures, the PREP Act's immunity provision does not apply.

It's true that the Secretary has indicated "that an 'inaction claim' is not necessarily beyond the scope of the PREP Act." *Reed, et al. v. Sunbridge Hallmark Health Servs., LLC*, No. CV 21-3702-JFW(AGRx), 2021 WL 2633156, at *4 (C.D. Cal. June 25, 2021). However, immunity for such claims is the exception, not the rule. The Secretary's December 3, 2020 Amendment makes clear that inaction claims fall within the scope of the PREP Act only where: "(1) there are limited covered countermeasures; and (2) there was a failure to administer a covered countermeasure to one individual because it was administered to another individual." *Id.* (citing Fourth Amendment, 85 Fed. Reg. at 79,197). In other words, "[p]rioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public authority's directive, can fall within the PREP Act and th[e] Declaration's liability protections." *Reed*, 2021 WL 2633156, at *4 (quoting Fourth Amendment, 85 Fed. Reg. at 79,197). For example, the Act could immunize a pharmacy that chooses to administer vaccines to people in Group 1 from a lawsuit brought by someone in

8

Group 2 alleging that the pharmacy wrongfully denied him a vaccine shot. "This specific example makes clear that the non-administration of a vaccine in limited supply necessarily arises from the decision to administer the vaccine to others first." *Lopez v. Life Care Ctrs. of Am., Inc.*, No. CV 20-0958 JCH/LF, 2021 WL 1121034, at *11 (D.N.M. Mar. 24, 2021).

That's not what's alleged here. The amended complaint does not allege that Ruiz contracted COVID-19 due to ConAgra's purposeful allocation of countermeasures to other individuals. Nor does it allege that Ruiz's loss was caused by ConAgra's prioritization of other individuals with respect to the administration, use, or distribution of countermeasures. To the contrary, Ruiz alleges that ConAgra "failed to exercise ordinary care in its Darien facility which resulted in over 100 of its workers at the plant testing positive in April 2020." ECF No. 8 ¶ 6. In sum, because Ruiz alleges "that it was inaction, rather than action," that caused his wife's death, the PREP Act's immunity provision does not shield ConAgra from suit or liability. *Reed*, 2021 WL 2633156, at *4 (citations omitted).

**II.     Ruiz's Claim for Negligence**

ConAgra also briefly argues that Ruiz fails to sufficiently plead a claim for negligence, contending that any harm was not foreseeable given the chaotic situation at the outset of the pandemic. As a federal court with diversity jurisdiction, I am "to apply state substantive law, as [I] believe the highest court of the state would apply it." *Neumann v. Borg-Warner Morse Tec LLC*, 168 F. Supp. 3d 1116, 1124 (N.D. Ill. 2016) (quoting *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 634 (7th Cir. 2007)). In Wisconsin, a plaintiff must prove four elements to demonstrate negligence: "'(1) [a] duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or

damage as a result of the injury.'" *Martindale v. Ripp*, 629 N.W.2d 698, 707 (Wis. 2001) (quoting *Rockweit v. Senecal,* 541 N.W.2d 742, 747 (Wis. 1995)).

ConAgra argues that the uncertain nature of the pandemic rendered any harm to Ruiz's wife unforeseeable. *See* ECF No. 13 at 10 (citing *Hoida, Inc. v. M&I Midstate Bank*, 717 N.W.2d 17 (Wis. 2006)). The question of foreseeability in Wisconsin is not narrowly construed, however: "The risk need not be to the particular plaintiff. The test is whether unreasonable risk to the world at large is created by the conduct." *Morgan v. Pa. Gen. Ins. Co.*, 275 N.W.2d 660, 665 (Wis. 1979) (citations omitted); *see also State v. Chrysler Outboard Corp.*, 580 N.W.2d 203, 222 (Wis. 1998) (noting that "[i]n Wisconsin everyone has a duty of due care to the whole world"); *Jones v. United States,* 194 F. Supp. 3d 849, 852 (E.D. Wis. 2016) (Wisconsin law "does not require that the particular harm (or the particular plaintiff) be foreseeable so long as a dangerous condition was created.").

Here, Ruiz alleges ConAgra was negligent because it failed to: establish a contact-tracing system, train its workers adequately regarding COVID-19 safety, properly distance its employees, and enforce a mask policy, see ECF No. 8 ¶ 11. If proven, these allegations could demonstrate that any risk to Ruiz (or anyone else) would have been foreseeable. This is particularly true given that the amended complaint alleges more than 100 employees tested positive for COVID-19 in April 2020. *Id.* at ¶ 6. The unfortunate nature of a pandemic is that infections spread exponentially, meaning that even a single infection can give rise to countless more cases. It is therefore conceivable that Ruiz could demonstrate the foreseeability of injury to employees and non-employees alike arising out of an unsafe work environment. (Proving causation is another matter.)[4]

---

[4] Conagra also takes issue with the amended complaint's reference to Wisconsin's Safe Place statute, Wis. Stat. § 101.11. The statute creates duties to employees and to "frequenters," which are defined as "every person, other

This conclusion is echoed by a recent district court case from Maryland. There, the court concluded it would have been foreseeable to Southwest Airlines that unsafe flight attendant training could have resulted in the infection of an employee and transmission of the virus to her spouse:

> Here, the question is whether it was foreseeable to Southwest, and not unreasonably remote, that as a result of its allegedly unsafe flight attendant training in the midst of a global pandemic, one training attendee would contract COVID-19 and fatally infect her spouse with it.
>
> Based on the facts as presently alleged, such an outcome is both foreseeable and not unreasonably remote. The COVID-19 virus is extraordinarily contagious and spreads via close contact, particularly in the absence of sufficient cleaning and social-distancing techniques designed to limit the possibility of spread.

*Estate of Madden v. Sw. Airlines, Co.*, No. 1:21-CV-00672-SAG, 2021 WL 2580119, at *4–5 (D. Md. June 23, 2021). The court also observed that it was

> foreseeable that an infected flight attendant . . . would subsequently be in close proximity to her spouse, because married couples frequently live together and share close contact, particularly when quarantining at home was recommended by health authorities. And it is, tragically, foreseeable that a family member who contracts COVID-19 may die.

*Id.* at *5.[5] The same holds true here. At the pleading stage of this lawsuit, I cannot say that a jury would be unable to find that Conagra's conduct foreseeably created an unreasonable risk of harm to others.[6]

---

than an employee, who may go in or be in a place of employment or public building under circumstances which render such person other than a trespasser." Wis. Stat. § 101.01(6). Even if Conagra is right, Conagra still has a general duty of care wholly apart from the Safe Place statute.

[5] That court ultimately dismissed the action based on Maryland case law limiting duties to third parties. *Id.* at *8.

[6] I do not address the arguments raised for the first time in Conagra's reply brief. *See Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 597 (7th Cir. 1997) ("[A]rguments raised for the first time in the reply brief are waived.") (internal quotation marks and citation omitted).

## CONCLUSION

For all the foregoing reasons, ConAgra's motion to dismiss the amended complaint, ECF No. 10, is **DENIED**. Its motion to dismiss the original complaint, ECF No. 5, is **DENIED as moot**.

**SO ORDERED** this 20th day of July, 2021.

_____
STEPHEN C. DRIES
United States Magistrate Judge