# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**ESTATE OF MARTHA AMADOR DE RUIZ,**
  *by its special administrator, Rigoberto Ruiz,* and
**RIGOBERTO RUIZ,**

    **Plaintiffs,**

    **v.**                                **Case No. 21-CV-387-SCD**

**CONAGRA FOODS PACKAGED FOODS, LLC,**

    **Defendant.**

---

## DECISION AND ORDER GRANTING IN PART
## DEFENDANT'S MOTION TO DISMISS

---

ConAgra Foods Packaged Foods, LLC, has moved to dismiss this wrongful death and survival action filed by the company's former employee, Rigoberto Ruiz, and the estate of his wife, Martha Amador de Ruiz. The plaintiffs allege that Rigoberto contracted the novel coronavirus at work because of ConAgra's failure to implement adequate safety measures, that Rigoberto transmitted the virus to Martha while he recovered at home, and that the virus caused Martha's death a few weeks later. ConAgra argues that both causes of action are barred by the exclusive-remedy provision of Wisconsin's Worker's Compensation Act, which generally provides that the sole liability of an employer for work-related injuries of its employees is under worker's compensation proceedings, not a tort action. ConAgra also argues that Martha's estate cannot proceed on its wrongful death and survival actions because Martha would not have been able to pursue either one against the company had she lived.

This "take-home" COVID case requires me to resolve two questions of Wisconsin law. First, does Wisconsin's worker's compensation exclusivity bar a tort action against an

employer for the COVID-related death of its employee's spouse when the death stems from the employee's infection at work? The answer is, it depends. Worker's compensation exclusivity bars the employee's action against his former employer and any action by the "non-injured" spouse for damages deriving wholly from the employee-spouse's work-related injury. But it does not extend to separate physical injuries suffered by the nonemployee-spouse, even when the employee-spouse's injury was part of the causal chain leading to those injuries. Second, under Wisconsin law, does an employer owe a duty of care to mitigate the risk of exposing its employees and others to a highly transmissible infectious virus? Yes. It is reasonable, under the circumstances of a global pandemic, to expect employers to provide a safe work environment that does not increase the risk of its employees spreading an infectious virus to others, including members of the employees' households. However, it's also possible that even if negligence could be established, Wisconsin's public policy would bar recovery. I therefore will withhold ruling on that issue and request additional briefing.[1]

## BACKGROUND

After Martha Amador de Ruiz passed away from coronavirus disease ("COVID-19"), her estate and her surviving spouse, Rigoberto Ruiz, filed a negligence action in Wisconsin state court against Rigoberto's former employer, ConAgra Foods Packaged Foods, LLC. *See* ECF No. 1-2. They alleged that Rigoberto contracted the virus that causes COVID-19 (severe acute respiratory syndrome coronavirus—SARS-CoV-2—or simply "coronavirus") while working at ConAgra, that Rigoberto transmitted the virus to his wife Martha, and that Martha

---

[1] The court has diversity jurisdiction because the plaintiffs are or were Wisconsin citizens and Conagra's sole member is a Delaware corporation whose principal place of business is Nebraska. *See* ECF No. 1 ¶¶ 5–12.

died from COVID-19 a few weeks later. ConAgra removed the action to federal court, *see* ECF No. 1, and the clerk of court randomly assigned it to me.

The plaintiffs have filed a second amended complaint raising two causes of action. *See* ECF No. 24. First, the estate and Rigoberto seek damages from ConAgra for Martha's death—the wrongful death action. *Id.* at 1–4. Second, the estate seeks damages from ConAgra for the pain and suffering Martha endured prior to her death—the survival action. *Id.* at 4–5. The plaintiffs allege for both causes of action that ConAgra was negligent and violated Wisconsin's Safe Place Act. *Id.* at 4, 5.

According to the second amended complaint, Rigoberto was working at ConAgra's food-packaging plant in Darien, Wisconsin, when the coronavirus began infecting Americans in 2020. ECF No. 24 ¶ 7. The plaintiffs allege that ConAgra knew one of its employees tested positive for the virus as early as April 13, 2020, and that ConAgra knew many of its employees were exhibiting symptoms prior to then. *Id.* ¶ 10. However, according to the plaintiffs, ConAgra failed to exercise ordinary care in responding to the coronavirus pandemic. *Id.* ¶ 8. For example, the plaintiffs allege that ConAgra failed to: establish a contract-tracing system, train its workers regarding COVID-19 safety, properly distance its employees within the plant to minimize risk, or require and enforce proper mask wearing within the plant. *Id.* ¶ 13. The plaintiffs also allege that ConAgra requested symptomatic line employees to continue working and housed workers who lived in company-provided facilities in unsafe conditions. *Id.* ¶¶ 11–12. According to the second amended complaint, such conduct was negligent toward the health and safety of the workers and their families.

Unsurprisingly, according to the second amended complaint, ConAgra's unsafe working conditions resulted in a coronavirus outbreak at the company's Darien plant. *See id.*

3

¶ 14. The plaintiffs allege that more than 100 workers tested positive for the virus in April 2020, *id.* ¶ 8, and that ConAgra temporarily closed the plant on April 19, 2020, *id.* ¶ 9. The plaintiffs further allege that Rigoberto was one of the many workers infected during the outbreak. *Id.* ¶ 9. According to the plaintiffs, Rigoberto tested positive for the virus on April 22, 2020, *id.* ¶¶ 7, 9; Rigoberto brought the virus home from the plant and infected his wife, Martha, *id.* ¶ 15; and Martha "suffered greatly" from the virus until it caused her death on May 5, 2020, *id.* ¶ 16.

## MOTION TO DISMISS STANDARD

According to Rule 8(a)(2) of the Federal Rules of Civil Procedure, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "To survive a motion to dismiss, a complaint must 'state a claim to relief that is plausible on its face.'" *Zemeckis v. Global Credit & Collect. Corp.*, 679 F.3d 632, 634–35 (7th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim satisfies this pleading standard when its factual allegations 'raise a right to relief above the speculative level.'" *Zemeckis*, 679 F.3d at 635 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). When analyzing a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Johnson v. Enhanced Recovery Co.*, 961 F.3d 975, 980 (7th Cir. 2020) (citing *Heredia v. Capital Mgmt. Servs., L.P.*, 942 F.3d 811, 814 (7th Cir. 2019)).

4

## DISCUSSION

ConAgra argues that the second amended complaint fails to state a viable claim for relief for two reasons. First, according to ConAgra, the plaintiffs' two causes of actions are barred by the exclusive-remedy provision of Wisconsin Worker's Compensation Act. Second, ConAgra contends that the estate's claims fail as a matter of law because Martha could not have brought a negligence action against ConAgra had she lived.

## I. Worker's Compensation Exclusivity

In Wisconsin, "worker's compensation benefits are primarily governed by Wisconsin Stat. ch. 102," Wisconsin's Worker's Compensation Act. *Graef v. Cont'l Indem. Co.*, 2021 WI 45, ¶ 11, 959 N.W.2d 628, 632. Section 102.03 of the Act sets forth the conditions of liability for employers. Generally, an employer is liable only when five conditions are present:

(1)     The employee sustained an injury;

(2)     At the time of the injury, both the employer and the employee were subject to the Act;

(3)     At the time of the injury, the employee was performing service growing out of and incidental to his employment;

(4)     The injury was not intentionally self-inflicted; and

(5)     The accident or disease causing injury arose out of the employment.

Wis. Stat. § 102.03(1)(a)–(e); *see also Graef*, 959 N.W.2d at 633. "The Act also covers a second or subsequent injury that stems from the first work-related injury." *Graef*, 959 N.W.2d at 633.

If all five conditions of liability are met, the Act is the exclusive remedy for claims against an employer for the work-related injuries of its employees. Wis. Stat. § 102.03(2). In other words, section 102.03(2) bars "any action by the employee against the employer for [work-related] injuries." *Franke v. Durkee*, 413 N.W.2d 667, 669 (Wis. Ct. App. 1987) (citing

5

*Messner v. Briggs & Stratton Corp.*, 353 N.W.2d 363, 365 (Wis. Ct. App. 1984)). Determining whether the Act preempts a cause of action is a legal question for the court. *See Weiss v. City of Milwaukee*, 559 N.W.2d 588, 591 (Wis. 1997) (citing *Jenson v. Emp'rs Mut. Cas. Co.*, 468 N.W.2d 1, 4 (1991)).

### A. The exclusive-remedy provision of Wisconsin's Worker's Compensation Act bars Rigoberto's wrongful death claim against his former employer

ConAgra first argues that the exclusivity provision of the Act bars Rigoberto's wrongful death claim. I agree. If proven, the allegations of the second amended complaint would satisfy all five conditions of worker's compensation liability under the Act. Rigoberto alleges that (1) he was employed at ConAgra's plant in Darien when he sustained an injury—becoming infected with the coronavirus. There is no dispute that, at the time of that injury, (2) Rigoberto and ConAgra were subject to the provisions of the Act and (3) Rigoberto was working at the plant incidental to his employment. Further, (4) there is no dispute that the infection was not self-inflicted, and (5) Rigoberto alleges that the infection occurred at work. Rigoberto also alleges that he brought the virus home from the plant, that he infected his wife, and that his wife died from COVID-19. Thus, the second amended complaint presents an unbroken causal chain from Rigoberto's workplace injury to the damages he allegedly suffered because of his wife's death. *See Graef*, 959 N.W.2d at 633–34 (finding that the Act's exclusivity provision barred an employee's claim against his employer because the complaint presented "an unbroken chain of events" starting with his initial workplace injury and ending with his suicide attempt). Because the second amended complaint's allegations, if proven, would satisfy the conditions of liability set forth in section 102.03(1)(a)–(e), the exclusive-remedy provision of section 102.03(2) dictates that Rigoberto's only remedy for his alleged injury is under the Act.

6

### B. The exclusive-remedy provision of Wisconsin's Worker's Compensation Act does *not* bar the estate's claims against Rigoberto's former employer

ConAgra also argues that the exclusivity provision of the Act bars the estate's claims for wrongful death and survival. Of course, Rigoberto's wife, Martha, was not a ConAgra employee and, thus, it appears that the conditions of worker's compensation liability—and therefore exclusivity—are not satisfied. *See* § 102.03(1)(a)–(e) (requiring *the employee* to sustain an injury during the course of her employment). But it's not quite so simple. The Wisconsin Supreme Court has held that the state's exclusivity provision is not limited to claims made by employees: "[Section 102.03(2)] does not state that the remedy under the Act is exclusive against an employer with respect to *merely* the claims of an employee, nor with respect to *merely* the claims of any particular class of persons." *Guse v. A.O. Smith Corp.*, 51 N.W.2d 24, 25 (Wis. 1952); *see also Grede Foundries, Inc. v. Price Erecting Co.*, 157 N.W.2d 559, 560 (Wis. 1968) ("It is well established that the sole liability of an employer because of the injury of an employee in the course of his employment*, either to the employee or to anyone else*, is under workmen's compensation law.") (emphasis added) (citations omitted). Accordingly, ConAgra contends that any claims from Martha's estate that flow from Rigoberto's alleged workplace exposure to the coronavirus are barred under the Act. ConAgra cites several cases to support its broad reading of Wisconsin's Worker's Compensation Act, but none of them advances the specific argument ConAgra makes here.

### 1. ConAgra's authority does not support its argument

According to ConAgra, the exclusive-remedy provision of Wisconsin's Worker's Compensation Act is broad enough to cover a wrongful death and survival action by an estate against the employer of the decedent's spouse if the death stems from a workplace injury. ConAgra cites only two Wisconsin cases in support of this argument. The first case, *Franke v.*

7

*Durkee*, involved a widow's malpractice suit against the in-house doctor of her husband's employer. Paul Durkee, M.D., the medical director at a General Motors plant in Janesville, Wisconsin, failed to diagnose an employee's lung tumor during a routine examination at the plant. *Franke*, 413 N.W.2d at 668. The employee, Howard Franke, died from the tumor, and his wife (individually and as personal representative of her husband's estate) sued Durkee for malpractice. After the trial court denied his motion for summary judgment, Durkee appealed, arguing that because Franke's injury arose out of his employment at G.M., Wisconsin's Worker's Compensation Act constituted his sole and exclusive remedy.

The Wisconsin Court of Appeals agreed, finding that the exclusivity provision of the Act barred not only the claim of Franke's estate but also the loss of consortium claim of his wife. *Id.* at 668–70. The court first rejected the wife's argument that the Act did not apply to her because "she, a nonemployee, was herself injured by the loss of her husband's services, society, and companionship." *Id.* at 669. In reaching that finding, the court noted that the Wisconsin Supreme Court "has recognized that the statute . . . bars the 'non-injured' spouse's claim for loss of consortium deriving from the employee-spouse's injuries. In this sense, the spouse seeking the recovery stands in the employee-spouse's shoes insofar as recovery from the employer is concerned." *Id.* (citing *Rosencrans v. Wis. Tel. Co.*, 194 N.W.2d 643, 645–46 (Wis. 1972)). The court also rejected the wife's other argument—that the Act did not apply to her because her husband's injury (the misdiagnosis) did not arise out of his employment. According to the court, "[b]ut for Franke's employment at G.M., he would not have presented himself to Durkee for the employer-offered medical services, and the 'injury' would not have occurred." *Id.* at 669–70.

8

*Franke* is materially different from our case. In *Franke*, the nonemployee-spouse's injury—loss of her husband's service, society, and companionship—was derivative in the sense that it arose from the employee-spouse's workplace injuries. It makes sense to apply the exclusive-remedy provision in that situation because the nonemployee-spouse cannot legally state a cause of action without alleging a disabling or lethal injury to her spouse. In our case, however, Martha is not merely a "non-injured spouse"; she suffered an independent injury by contracting and dying of COVID-19. The estate's claim for damages for that injury is not legally dependent on Rigoberto's alleged workplace injury. To be sure, Martha's estate alleges that Rigoberto became infected at work and transmitted the virus to his wife. But neither *Franke* nor the case the *Franke* court relied upon, *Rosencrans*, holds that such a causal link alone is sufficient to trigger the excusive-remedy provision of the Act concerning claims raised by nonemployees.

The other Wisconsin case ConAgra cites—*Graef v. Continental Indemnity Co.*—does not help the company's position because that case involved a tort claim by an employee, not a claim by a nonemployee-third party. Francis Graef was gored by a bull while working in a livestock yard, resulting in physical and mental injuries. *Graef*, 959 N.W.2d at 630. A doctor prescribed an antidepressant, and the livestock's worker's compensation insurance carrier was responsible for authorizing and paying for the medication. The insurance carrier subsequently denied payment, and Graef couldn't afford to purchase the medication on his own. A couple months after getting off his meds—and more than two and a half years after the initial workplace injury—Graef attempted suicide and suffered a gunshot injury. Graef then filed a tort action against the insurance carrier, which moved for summary judgment, arguing that Graef should have filed a worker's compensation claim. *Id.* at 630–31. The trial court denied

9

the motion, but the state appellate court reversed and remanded with instructions to grant summary judgment to the insurance carrier. *Id.* at 631.

The Wisconsin Supreme Court affirmed the appellate court's decision, concluding that "[Wisconsin's Worker's Compensation] Act provide[d] Graef's exclusive remedy for the injuries alleged in his complaint." *Id.* at 630. The court found that "Graef's complaint present[ed] an unbroken chain of events starting with his [initial workplace] injury and ending with his . . . suicide attempt." *Id.* at 633–34. According to the court, because the complaint consisted of allegations that, if proven, would have satisfied the conditions for liability set forth in section 102.03(1), the Act provided Graef's exclusive remedy even though the subsequent injury occurred years later outside of work. *See id.*

*Graef* does not support ConAgra's argument. *Graef* involved an employee suing his employer's worker's compensation insurance carrier for a second injury that stemmed from a work-related injury. In our case, however, a nonemployee-spouse is attempting to sue her husband's employer for her initial, independent injury. It does not appear that Wisconsin courts have applied *Graef*'s unbroken-causal-chain concept to nonemployee tort claims. Thus, although *Graef* lends support for the dismissal of Rigoberto's claim against ConAgra, it does not compel dismissal of the claims asserted by Martha's estate.

ConAgra cites several cases from other jurisdictions, but those decisions are similarly unhelpful to its position. Three of those cases involve prison guards attempting to sue their employer (or former employer) for unsafe working conditions during the COVID pandemic. *See Smith v. Corecivic of Tenn. LLC*, No. 3:20-cv-0808-L-DEB, 2021 WL 927357, 2021 U.S. Dist. LEXIS 45741 (S.D. Cal. Mar. 10, 2021); *Arnold v. Corecivic of Tenn. LLC*, No. 20-CV-0809 W (MDD), 2021 WL 63109, 2021 U.S. Dist. LEXIS 2868 (S.D. Cal. Jan. 6, 2021);

*Brooks v. Corecivic of Tenn. LLC*, No. 20cv0994 DMS (JLB), 2020 WL 5294614, 2020 U.S. Dist. LEXIS 162429 (S.D. Cal. Sept. 4, 2020). Because they did not involve claims from nonemployee-third parties, those cases simply are not on point.

The other two cases cited by ConAgra did involve nonemployee negligence claims. In *Palmer v. Amazon.com, Inc.*, 498 F. Supp. 3d 359, 364–68 (E.D.N.Y. 2020), several employees of an Amazon fulfillment center and people who lived with those employees sued Amazon for failing to provide a safe workplace. The United States District Court for the Eastern District of New York granted Amazon's motion to dismiss the plaintiffs' safe workplace claim to the extent it was based on past harm, finding it barred by New York's Workers' Compensation Law. *See Palmer*, 498 F. Supp. 3d at 374–75. However, the exclusive-remedy provision in New York's worker's compensation law is much broader than the one in Wisconsin. "New York's Workers' Compensation Law states that it 'shall be exclusive and in place of any other liability whatsoever' to an employee '*or any person otherwise entitled to recover damages*, contribution or indemnity, at common law or otherwise, on account of such injury or death or liability arising therefrom." *Id.* at 374 (quoting N.Y. Workers Comp. Law § 11) (emphasis added). Thus, unlike in Wisconsin, the exclusivity provision in New York explicitly applies to nonemployees. Moreover, the plaintiffs in *Palmer* did not seek damages for Amazon's alleged failure to provide a safe workplace; they sought only injunctive relief. *See Palmer*, 498 F. Supp. 3d at 366. It is therefore unclear whether the nonemployee-plaintiffs in that case alleged injuries independent of the injuries to the employee-plaintiffs.

ConAgra's best case arguably is *Kuciemba v. Victory Woodworks, Inc.*, No. 20-cv-09355-MMC, 2021 WL 8129704, 2021 U.S. Dist. LEXIS 88997, at *2 (N.D. Cal. May 10, 2021). There, a nonemployee alleged that she contradicted a severe case of COVID-19 "through

11

direct contact with" their employee-spouse, who presumably became infected at work. *Kuciemba*, 2021 U.S. Dist. LEXIS 88997, at *2; *see also See's Candies, Inc. v. Superior Court*, 288 Cal. Rptr. 3d 66, 85 (Cal. Ct. App. 2021) (discussing the facts of *Kuciemba*), *pet. for review denied*, 2022 Cal. LEXIS 1976 (Cal. Apr. 13, 2022). Following a hearing, the United States District Court for the Northern District of California granted the employer's motion to dismiss, finding the nonemployee-spouse's claims "barred by the exclusive remedy provisions of California's workers' compensation statutes." *Kuciemba*, 2021 U.S. Dist. LEXIS 88997, at *2 (citing Cal. Labor Code §§ 3600, 3602).

Although *Kuciemba* is on all fours with our case factually, that decision does not compel dismissal of the estate's claims here. First, it is not binding on me. Second, I am unable to trace the path of the court's reasoning because it didn't provide any in its dismissal order. The order does not explain why California's worker's compensation law bars the nonemployee's claims, nor does it discuss any relevant authority. And while the order states that the court provided its reasons in detail at the hearing, *see Kuciemba*, 2021 U.S. Dist. LEXIS 88997, at *2, ConAgra has not provided me with a transcript of that hearing. Third, liability under California's worker's compensation statute and the state's exclusive-remedy provision appear broader on their face than the statutory counterparts in Wisconsin. *See* Cal. Labor Code § 3600(a) (noting that liability for compensation under California's Workers' Compensation Act is "in lieu of any other liability whatsoever *to any person*") (emphasis added); *see also* Cal. Labor Code § 3602(a) (revealing that California's exclusive-remedy provision explicitly applies to "the employee *or his or her dependents*") (emphasis added).

Finally, subsequent events have essentially undercut any value the *Kuciemba* district-court decision might have held. The plaintiffs appealed the district court's order, and the

12

United States Court of Appeals for the Ninth Circuit recently issued an order certifying the worker's compensation exclusivity issue to the California Supreme Court. *See Kuciemba v. Victory Woodworks, Inc.*, No. 21-15963, 2022 WL 1180878, 2022 U.S. App. LEXIS 10786, *2–3 (9th Cir. Apr. 21, 2022). The Ninth Circuit determined that certification is warranted because the issue likely is outcome-determinative and because there is no controlling precedent in California. *See id.* at *4–5. Because the Ninth Circuit found that the issue is wholly *un*resolved, I cannot rely on the district's judgment that the issue was clear enough to find exclusivity.

### 2.    Persuasive authority suggests that the estate's claims are not barred

It appears that no Wisconsin case answers the legal question presented here: whether the state's worker's compensation exclusivity provision bars a tort action against an employer for a nonemployee's injury that derives in fact from, but does not depend on, an employee's workplace injury. We do, however, have help from other jurisdictions. For example, in *Woerth v. United States*, 714 F.2d 648, 649 (6th Cir. 1983), G. Knute Woerth contracted hepatitis from his wife, who herself contracted the disease while working as a nurse at a veteran's administration hospital, allegedly due to "the hospital's failure to follow its own prophylactic procedures." The wife was awarded benefits under the Federal Employee's Compensation Act for her injuries, but Woerth's claims were administratively denied. Woerth then sued the United States government under the Federal Tort Claims Act. The district court granted the government's motion for summary judgment, finding that, although Woerth was not a federal employee, his tort claim still was barred by the exclusive-remedy provision of the federal worker's compensation act.

13

The United States Court of Appeals for the Sixth Circuit reversed and remanded the matter back to the district court. The court first determined that the district court erred in relying on cases where the nonemployee-spouse's claim derived wholly from the employee-spouse's workplace injury. *See id.* at 649–50. The Sixth Circuit explained that Woerth was not seeking recovery for loss of consortium or "any other suffering due to his wife's illness"; rather, he sought "compensation for his own medical expenses and lost wages." *Id.* Thus, the proper inquiry was whether Woerth's claim was "with respect to the injury or death of an employee," not "merely whether the plaintiff [was] an 'employee, his legal representative, spouse, dependents, next of kin, [or] any other person otherwise entitled to recover damages.'" *Id.* at 650 (quoting 5 U.S.C. § 8116(c)). The court held that, under that lens, Woerth's claim was not barred:

> While Woerth's hepatitis may derive from his wife as a matter of proximate cause, his cause of action does not. His right to recover for the negligence of the United States is based upon his own personal injury, not a right of "husband and wife." The fact that the disease was transmitted through his spouse does not place Woerth in a position different from that of any other unrelated, but similarly injured tort victim. Since Woerth is not an employee of the government and does not seek damages "with respect to" his wife's injury, he is not barred by [the exclusive-remedy provision the Federal Employee's Compensation Act] from attempting to establish his claim under the [Federal Tort Claims Act].

*Woerth*, 714 F.2d at 650.

More recently, the California Court of Appeals reached a similar outcome in a state tort action on facts essentially identical to the ones we have in our case. In *See's Candies*, the plaintiffs—the wife and daughters of the nonemployee-spouse—alleged that the employee-wife contracted the novel coronavirus at work because of the employer's inadequate safety measures, that the employee-wife infected her husband while convalescing at home, and that the husband later died from COVID-19. *See See's Candies*, 288 Cal. Rptr. 3d at 69, 71. The

14

employer filed a demurrer, arguing that the exclusive-remedy provision of California's Workers' Compensation Act barred the plaintiffs' claims under "the 'derivative injury doctrine,' under which [the state's] exclusivity provisions preempt not only those causes of action premised on a compensable workplace injury, but also those causes of action premised on injuries 'collateral to or derivative of' such an injury." *Id.* at 69–71 (citations and some internal quotation marks omitted). Following a hearing, the trial court overruled the demurrer, and the employer appealed. *Id.* at 71–72.

On appeal, the California 2nd District Court of Appeal held that the state's exclusivity provisions did not bar the plaintiffs' wrongful death claim against the widow's employer. The court determined that the employer's argument was inconsistent with *Snyder v. Michael's Stores, Inc.*, 945 P.2d 781 (Cal. 1997), "which establishes that the fact an employee's injury is the biological cause of a nonemployee's injury does not thereby make the nonemployee's claim derivative of the employee's injury." *See's Candies*, 288 Cal. Rptr. 3d at 70. In other words, in California, the derivative injury doctrine does not extend to claims by third parties solely because the nonemployee's injury would not have existed but-for the employee's work-related injury; rather, the question is whether the nonemployee's injury was legally or logically dependent on the employee's workplace injury. *See id.* at 77–83. The court determined that, under the facts of its case, the plaintiffs did not "seek damages for losses arising from a disabling or lethal injury to [the employee]." *Id.* at 83–84. Because the plaintiffs' injuries were not legally or logically dependent on the employee's alleged viral infection in the workplace, the derivative injury doctrine did not apply. The court also explained how its holding was consistent "with those of appellate courts of other jurisdictions on analogous

15

facts" and distinguished other COVID lawsuits, including the district-court decision in *Kuciemba*. *See id.* at 84–86.

I believe that, given the opportunity, the Wisconsin state courts would adopt the reasoning of cases like *Woerth* and *See's Candies* to find that the state's worker's compensation exclusivity provision bars tort claims by a nonemployee only when the nonemployee's injury is completely dependent upon the employee's injuries. That finding would be consistent with state policy underpinning its Worker's Compensation Act. *See Korth v. Am. Family Ins. Co.*, 340 N.W.2d 494, 496 (Wis. 1983) (suggesting that the "preferred approach" is not to rely on labels like "separate" or "derivative" but rather "to examine the legal context in which the question . . . arises and to make a decision which furthers the policies of the particular law in issue") (citation omitted). As the Wisconsin Supreme Court has explained, "[i]n enacting the Act, the legislature intended to impose upon employers an absolute immunity . . . from all tort liability on account of injuries to employees." *Guse*, 51 N.W.2d at 26. Employer immunity is part of "'the grand bargain' 'under which workers, in exchange for compensation for work-related injuries regardless of fault, . . . relinquish the right to sue employers and . . . accept smaller but more certain recoveries than might be available in a tort action.'" *Graef*, 959 N.W.2d at 632 (quoting *County of La Crosse v. Wis. Emp't Relations Comm'n*, 513 N.W.2d 579, 583 (Wis. 1994)). But nonemployees, like the deceased here, cannot take advantage of that grand bargain when they seek compensation for an injury that does not depend on the injury or death of an employee.

A few examples help illustrate why finding the estate's claims barred would not further the public policy behind Wisconsin's Worker's Compensation Act. Suppose, for example, that Rigoberto had infected someone other than his wife—a stranger. Under ConAgra's

16

interpretation of Wisconsin law, the stranger's claim would be barred despite having no connection to the employer and no recourse under the Act.[2] Or, to take a more extreme example, suppose the plaintiff in *Graef* had become homicidal (instead of suicidal) and engaged in a mass shooting outside the workplace. (Recall that the plaintiff in *Graef* shot himself after his employer's insurance carrier denied payment for antidepressant medication prescribed following workplace injury.) The hypothetical victims in that scenario would be barred from asserting tort claims against the employer if but-for causation alone was sufficient to trigger the Act's exclusivity provision. And yet none of the victims in these examples benefited from the grand bargain that worker's compensation reflects.[3]

Turning back to the facts of our case, I find that allowing the estate's claims to proceed in this tort action would not be inconsistent with the policies behind Wisconsin's Worker's Compensation Act. Martha was not a ConAgra employee, and her estate does not seek damages "on account of" Rigoberto's alleged infection at work. Rather, the estate sues for damages arising from Martha's death, an event allegedly caused by, but not legally or logically dependent on, Rigoberto's infection. Because the estate's causes of action do not derive from a workplace injury, they are not barred by the exclusivity provision found at section 102.03(2) of the Act.

*      *      *

---

[2] The *See's Candies* court posited a similar, but more extreme, example: a researcher in a laboratory studying dangerous pathogens becomes infected due to his employer's lax safety protocols; the researcher takes a bus home; and the researcher infects all other passengers with a lethal virus. *See See's Candies*, 288 Cal. Rptr. 3d at 83. If but-for causation is sufficient, then all passengers would be barred from asserting tort claims against the laboratory.

[3] In presenting these examples, I do not suggest that the claims in these hypotheticals would necessarily prove successful.

Accordingly, the exclusive-remedy provision of Wisconsin's Worker's Compensation Act bars Rigoberto's claims against his former employer, but it does not bar the claims asserted by his wife's estate.

## II. The Estate's Claims

Martha Amador de Ruiz's estate brings claims against ConAgra for wrongful death and survival. A wrongful death action may be brought by certain relatives of tort victims to recover the damages that the death caused them. *See Christ v. Exxon Mobil Corp.*, 2015 WI 58, ¶ 21, 866 N.W.2d 602, 608–09; *see also Day v. Allstate Indem. Co.*, 2011 WI 24, ¶ 61, 798 N.W.2d 199, 212–13. Contrastingly, a survival action is brought by the decedent's estate or personal representative to recover damages suffered by the decedent prior to death. *See id.* The threshold determination in either action is "whether the decedent would have been entitled to maintain an action and recover damages had [she] lived." *Delvaux v. Langenberg*, 387 N.W.2d 751, 765 (Wis. 1986); *Christ*, 866 N.W.2d at 608–09. In other words, the plaintiff in a wrongful death or survival action has no cause of action if the decedent would not have been able to demonstrate "all the elements of the tort that resulted in [her] death." *Christ*, 866 N.W.2d at 613.

Here, Martha's estate alleges that ConAgra's negligence resulted in her pain and suffering and, ultimately, her death. To state an actionable claim for negligence in Wisconsin, a plaintiff must plead facts, which if proved true, would establish four elements: "(1) the existence of a duty of care on the part of the defendant, (2) a breach of that duty of care, (3) a causal connection between the defendant's breach of the duty of care and the plaintiff's injury, and (4) actual loss or damage resulting from the [breach]." *Hoida, Inc. v. M&I Midstate Bank*, 2006 WI 69, ¶ 23, 717 N.W.2d 17, 26–27 (quoting *Gritzner v. Michael R.*, 2000 WI 68, ¶ 19,

18

611 N.W.2d 906, 912). Wrongful death and survival actions are subject to the defense of contributory negligence under Wisconsin's comparative negligence statute. *See Chang v. State Farm Mut. Auto. Ins. Co.*, 514 N.W.2d 399, 404 (Wis. 1994) (citing Wis. Stat. §§ 895.04(7), 895.045). "If the party-beneficiary's negligence is greater than the negligence of the person against whom recovery is sought, the party-beneficiary is barred from recovering damages." *Chang*, 514 N.W.2d at 404.

ConAgra argues that the estate's claims fail as a matter of law because ConAgra did not owe a duty of care to Martha. It also argues that Rigoberto was outside the scope of his employment when he infected his wife, and Rigoberto and Martha were more contributorily negligent for Martha's death than ConAgra was.

### A.    ConAgra owed Rigoberto and Martha a duty of care under the circumstances

"Wisconsin has long followed the minority view of duty set forth in the dissent of *Palsgraf v. Long Island Railroad*." *Alvarado v. Sersch*, 2003 WI 55, ¶ 13, 662 N.W.2d 350, 353 (citing *Rockweit v. Senecal*, 541 N.W.2d 742, 747 (Wis. 1995)). "In that dissent, Judge Andrews explained that 'everyone owes to the world at large the duty of refraining from those acts that may unreasonably threaten the safety of others.'" *Alvarado*, 662 N.W.2d at 353 (quoting *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99, 103 (N.Y. 1928) (Andrews, J., dissenting)).

Duty involves two distinct aspects: "(1) the existence of a duty of ordinary care; and, (2) an assessment of what ordinary care requires under the circumstances." *Hoida*, 717 N.W.2d at 28 (citing *Hatleberg v. Nw. Bank Wis.*, 2005 WI 109, ¶¶ 17–18, 700 N.W.2d 15, 22). "Every person has a duty to use ordinary care in all of his or her activities, and a person is negligent when that person fails to exercise ordinary care." *Alvarado*, 662 N.W.2d at 353 (citing *Gritzner*, 611 N.W.2d at 912–13). "In Wisconsin a duty to use ordinary care is

19

established whenever it is foreseeable that a person's act or failure to act might cause harm to some other person." *Alvarado*, 662 N.W.2d at 353 (citing *Gritzner*, 611 N.W.2d at 912). Nevertheless, "the duty owed to the world is not unlimited but rather is restricted to what is reasonable under the circumstances." *Hocking v. City of Dodgeville*, 2009 WI 70, ¶ 12, 768 N.W.2d 552, 556 (citing *Hoida*, 717 N.W.2d at 28–29).

Here, under the circumstances, it's not difficult to conclude that it would be foreseeable that ConAgra's actions (or failures to act) might cause harm, not just to employees, but also to others. In fact, that's the very nature of a communicable disease. If the coronavirus were not contagious, it would not have spawned a pandemic that is now in its third year. That Martha was not an employee is largely irrelevant: in Wisconsin, the duty of care is a general one, not targeted at specific persons or circumstances: it's an "obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the identity of the harmed person or harmed interest is unknown at the time of the act." *A.E. Inv. Corp. v. Link Builders, Inc.,* 214 N.W.2d 764, 766 (Wis. 1974). Accordingly, I conclude that ConAgra had a duty to use reasonable care to prevent individuals (to the extent reasonable) from getting and spreading the coronavirus.

But that's not quite the whole picture. In Wisconsin, public policy plays a strong role in the liability analysis. "[L]iability in negligence cases in Wisconsin more often has been limited by consideration of public policy factors" rather than by emphasizing "duty and foreseeability as a way of limiting liability in a negligence case." *Nichols v. Progressive N. Ins. Co.,* 2008 WI 20, ¶ 36, 746 N.W.2d 220, 231. This is sometimes referred to as proximate cause. *Alvarado,* 662 N.W.2d at 359–60 (Sykes, J., dissenting) ("What we in Wisconsin refer to as public policy limitations on liability, Judge Andrews catalogued as factors that govern the

20

court's determination of legal or 'proximate cause.'"). For example, courts will preclude liability in situations where "recovery would enter into 'a field that has no sensible or just stopping point.'" *Hornback v. Archdiocese of Milwaukee,* 2008 WI 98, ¶ 49, 752 N.W.2d 862, 875 (Wis. 2008) (citing *Hoida,* 717 N.W.2d at 32). That is, when liability would present "a slippery slope with no sensible or just stopping point," courts will refuse to find liability despite a finding of negligence. *Hornback*, 752 N.W.2d at 876, 879.

Here, it's arguable that imposing liability on ConAgra for death resulting from the transmission of a virus from its employee to a nonemployee would fall into that category because there would be no just stopping point for liability. What if the deceased were not a spouse but simply someone who sat next to Rigoberto Ruiz on a bus? Or a next-door neighbor? Or what if Rigoberto Ruiz lived in a group home and infected thirty people, who then themselves went on to infect a hundred? It's unclear how we would draw a line in a case like this. It's also possible that other public policy considerations would preclude liability. Notably, the Wisconsin legislature passed, and the governor signed, a law immunizing business from liability for COVID-19-related illness and death. *See* Wis. Stat. § 895.476. Although the plaintiffs apparently filed their action in state court just one day prior to that law taking effect, the policy-making branches of the state's government do not appear to favor liability under these circumstances.

Conagra has touched on public policy tangentially in its brief, but it did not explicitly argue it, which counsels against proceeding too far down this path at this stage. However, I will ask the parties to provide supplemental briefing addressing whether public policy would bar recovery here, even if negligence were ultimately found. *See Miller v. Wal-Mart Stores, Inc.,*

21

580 N.W.2d 233, 240 (Wis. 1998) (court requested supplemental briefs from the parties regarding the public policy considerations).

**B.     The estate is not pursuing a vicarious liability claim against ConAgra**

The second amended complaint does not seek to hold ConAgra liable for the negligent acts of its employees. Rather, according to the second amended complaint, it is ConAgra's own failure to act—that is, the company's alleged failure to implement and enforce proper COVID-19 mitigation strategies—the led to Martha's death. Put simply, this is not a case involving vicarious liability. *See, e.g.*, *Behrendt v. Gulf Underwriters Ins. Co.*, 2009 WI 71, ¶¶ 13–40, 768 N.W.2d 568, 573–79 (distinguishing a negligence claim from a vicarious liability claim).

**C.     At this stage in the proceedings, I cannot say that Rigoberto and Martha were more contributorily negligent for Martha's death than ConAgra**

ConAgra argues that, because the second amended complaint alleges that Rigoberto (not the company) infected Martha, Rigoberto and Martha are more contributorily negligent for Martha's death than the company as a matter of law.

"The apportionment of negligence is ordinarily a question for the jury." *Huss v. Yale Materials Handling Corp.*, 538 N.W.2d 630, 637 (Wis. Ct. App. 1995) (citing *Kloes v. Eau Claire Cavalier Baseball Ass'n*, 487 N.W.2d 77, 81 (Wis. Ct. App. 1992)). "The instances in which a court may rule, as a matter of law, that the plaintiff's negligence exceeds the defendant's are extremely rare." *Taft v. Derricks*, 2000 WI App 103, ¶ 25, 613 N.W.2d 190, 197 (citing *Huss*, 538 N.W.2d at 637). "The apportionment of negligence is a matter that rests within the sound discretion of a jury based upon the inferences it draws from the evidence presented, together with its determination as to the standard of care required of the parties." *Taft*, 613 N.W.2d at 197 (quoting *Huss*, 538 N.W.2d at 637). "Accordingly, summary judgment should only be

22

used in the rare case where it is clear and uncontroverted that one party is substantially more negligent than the other and that no reasonable jury could reach a conclusion to the contrary." *Huss*, 538 N.W.2d at 637 (citations omitted).

This is not the rare case where the court can determine, as a matter of law, that the plaintiff's negligence exceeds the defendant's negligence. Without any discovery, we don't yet have any evidence upon which to compare the relative negligence of those involved; all we have are allegations. The allegation in the second amended complaint that Martha was infected by Rigoberto outside of ConAgra's plant is insufficient to establish that Rigoberto and Martha contributed more to Martha's death than ConAgra's allegedly inadequate COVID safety measures. The apportionment of negligence in this case is therefore better left for another day.

## CONCLUSION

For all the foregoing reasons, the court **GRANTS in part** the defendant's motion to dismiss, ECF No. 27. The court dismisses Rigoberto Ruiz's wrongful death action against his former employer, ConAgra. The court also requests supplemental briefing on the question of whether public policy would bar recovery by the estate. The parties may file an additional brief on that subject on or before May 17, 2022.

**SO ORDERED** this 3rd day of May, 2022.

_____
STEPHEN C. DRIES
United States Magistrate Judge

23